**Lisa A. FLAHERTY, Plaintiff,**

v.

**Abraham SEROUSSI, et al., Defendants.**

**No. Civ.A. 5:01–CV–0054 (DNH/DEP).**

United States District Court,
N.D. New York.

Feb. 5, 2002.

---

**302**

Elmer R. Keach, III, Office of Elmer R. Keach, III, Albany, NY, for plaintiff.

Gregg T. Johnson, Tanya A. Yatsco, Girvin & Ferlazzo, P.C., Albany, NY, for defendants.

## DECISION AND ORDER

PEEBLES, United States Magistrate Judge.

This matter, which has been pending for slightly more than one year and has entailed the need for frequent court intervention, is once again before me, this time occasioned by defendants' application for an order compelling discovery, and seeking the issuance of a protective order shielding certain information sought by the plaintiff through pretrial discovery. For the reasons set forth below, defendants' motion to compel discovery is in large part granted, with certain exceptions noted. Insofar as defendants' motion for a protective order is concerned, that motion is denied, without prejudice to its renewal based upon presentment of a more concrete

set of facts demonstrating the need for entry of such an order.

## I. BACKGROUND

Plaintiff initiated this action on January 12, 2001 (*see* Dkt. No. 1), and asserts civil rights claims under 42 U.S.C. § 1983 based upon defendants' alleged violation of her rights of privacy and freedom of association under the First Amendment, and deprivation of equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution (*see* Amended Complaint) (Dkt. No. 50) ¶¶ 45–62.[1] In her complaint, plaintiff has named Abraham Seroussi, the former Mayor of the City of Gloversville; Karen Reid, the City's Commissioner of Finance; and the City itself as defendants, and seeks recovery of compensatory and punitive damages, as well as injunctive relief, costs, and attorneys' fees. *Id.* ¶¶ 67–72, "Prayer for Relief".

In her complaint plaintiff has challenged defendants' failure to reappoint her in 2001 as the Gloversville Deputy Commissioner of Finance—a position in which she served from January of 1999 through the end of 2000. *Id.* ¶¶ 8–44. Plaintiff attributes that decision to her amorous relationship with Paul Reid, a Gloversville City Councilman, noting that in the past "Councilman Reid ... has been openly critical of the fiscal policies of the City of Gloversville and the Mayoral term of Defendant Seroussi" and that "Mayor Seroussi and Councilman Reid have a contentious, if not hateful, relationship with each other." *Id.* ¶ 9.

## II. Procedural History Surrounding Discovery Dispute

On May 17, 2001 defendants served plaintiff with a document production request, pursuant to Rule 34 of the Federal Rules of Civil Procedure. Affidavit of Tanya A. Yatsco, Esq. ("Yatsco Aff.") (Undocketed) ¶ 3, Exh. A. After protracted discussions directed toward efforts to comply with that document request—including dialogue concerning the entry of a protective order covering some of the documents requested, among them medi-

---

1. Plaintiff's amended complaint also asserts a pendent state law breach of contract claim.

Amended Complaint (Dkt. No. 50) ¶¶ 63–66.

cal and financial records of the plaintiff—a discovery conference was conducted by the court on August 23, 2001 in connection with the document request. *Id.* ¶ 6; *see* Minute Entry of 8/23/01 (Dkt. No. 23).

Plaintiff served a formal response to the May 17, 2001 document discovery request on August 27, 2001. Yatsco Aff. ¶ 7, Exh. B. Included with that response was one single document produced in accordance with defendants' various demands.[2] *Id.*

On October 10, 2001 a second discovery conference was conducted to address various issues including, *inter alia,* the dispute over Ms. Flaherty's response to defendants' document discovery requests. *See* Minute Entry 10/10/01 (Dkt. No. 42). At the close of that conference the parties were directed to make written submissions concerning the discovery dispute, following which I would decide the matter. In compliance with that directive, defendants have submitted a letter dated November 9, 2001 outlining their position. Accompanying that letter was an affidavit of Tanya A. Yatsco, Esq., one of the attorneys representing the defendants, with exhibits— including the disputed document demand and plaintiff's response to it. In response, plaintiff's counsel has proffered a letter dated November 19, 2001 outlining his client's position concerning the pending discovery dispute.

## III. *DISCUSSION*

The discovery dispute currently pending before the court can be broken down into three categories, including whether 1) a protective order should be issued in connection with all or some of the document production to occur in the case; 2) plaintiff should be compelled to produce all documents in her possession, custody or control relating to her employment with the City, as well as any newspaper articles, press releases and the like concerning the underlying disputed matters; and 3) plaintiff should be directed to clarify her responses to certain of the document discovery requests previously answered. The parties appear to be at impasse in their disagreement on each of these three

issues, despite their claim to have worked in good faith toward resolving or narrowing the issues to be presented to the court for determination.

### 1. *Protective Order*

The parties' discussions concerning the entry of a protective order in this case, which have been ongoing for several months, have as their genesis defendants' request for certain of plaintiff's educational and medical records. In response to that demand, the plaintiff has proposed the issuance of a protective order preserving the privacy of those records to be produced in the context of this litigation. Defendants are not opposed to the entry of an protective order, but suggest that any such order should be "reciprocal", and should correspondingly protect records produced by them in response to any demands by the plaintiff. Plaintiff, while not adverse to the concept of reciprocity, objects to the entry of a protective order which would restrict her right to disseminate financial records of the City of Gloversville as well as records concerning the investigation of "official misconduct" by City employees.

The parties have been unable to agree on the terms of a protective order. Defendants therefore now argue that plaintiff should be compelled to produce her medical and education records without a protective order urging a variety of bases for that position, including waiver by plaintiff of any objections based upon her failure to assert them in a proper and timely manner, citing *Land Ocean Logistics, Inc. v. Aqua Gulf Corp.*, 181 F.R.D. 229 (W.D.N.Y.1998). Alternatively, defendants request the issuance of a protective order covering educational and medical records produced by any party.

■ The issuance of protective orders is governed by Rule 26(c) of the Federal Rules of Civil Procedure. That rule provides, in pertinent part, that "[u]pon motion by a party ... and for good cause shown, the court ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or

---

2. Other documents falling within the scope of defendants' requests were apparently withheld

by the plaintiff pending entry of a protective order. Yatsco Aff. ¶ 7.

undue burden or expense ..." Fed.R.Civ.P. 26(c). That provision further allows for the crafting of appropriate relief, including "that the disclosure or discovery may be had only on specified terms and conditions". *Id.* The burden of establishing entitlement to a protective order rests with the party seeking to restrict discovery. *Id.; Dove v. Atlantic Capital Corp.,* 963 F.2d 15, 19 (2d Cir.1992); *Marisol A. v. Giuliani,* No. 95 CIV. 10533, 1997 WL 630183, at \*2 (S.D.N.Y. Oct.10, 1997).

It is true, as defendants have suggested, that the lengthy unexcused delay by plaintiff in formally responding to defendants' Rule 34 document discovery request can have significant legal implications, including the potential waiver of any objections which could have been made if timely interposed. *Land Ocean Logistics,* 181 F.R.D. at 236–37; *Standard Chlorine of Delaware, Inc. v. Sinibaldi,* 821 F.Supp. 232, 261–62 (D.Del.1992). Because in this instance we are not dealing with an issue of privilege, however, but instead a request for a protective order, I will overlook this potentially troublesome defect and instead address the merits of the request for a protective order.

With few exceptions the parties appear to be in agreement that a reciprocal protective order should be issued in the case in order to protect the integrity of records being produced during pretrial discovery containing inherently privately and confidential information. The parties' positions diverge, however, on the scope of such an order, including whether it should cover financial and personnel records.

■ In my view, the defendants have not carried their burden to establish that certain financial records that fall within the scope of plaintiff's demands should be protected. The routinely maintained financial records of a municipality such as the City of Gloversville are presumptively open to the public, including the municipality's constituents. The issuance of a protective order shielding the financial records in issue from disclosure should therefore be based upon some critical, over-

riding considerations which strongly mitigate against dissemination notwithstanding the public availability of such records. To date, defendants have not identified the records which they seek to protect from third-party disclosure, nor have they offered specific reasons for limiting disclosure of the financial records to be produced. I am therefore not in a position at this juncture to intelligently assess the validity of defendants' concerns insofar as protection of City financial records is concerned.

■ By contrast, medical, educational, and other inherently private information concerning individual employees of the City, particularly those who are not parties to the action, do not carry with them the same imprimatur of availability to public scrutiny.[3] Similarly, the public dissemination of records relating to allegations and investigations which have not ripened into employment actions carry with them a stigma and the potential for embarrassment, overriding any potential relevance to plaintiff's claims. Accordingly, in my view such records are of a nature deserving of Rule 26(c) protection.

In sum, I find that issuance of a protective order in this case is warranted, although less broad in scope than proposed by the defendants, and suggest to the parties that when negotiating the language for such an order they look to the protective order which was proposed by defendants and agreed to in part by the plaintiff. *See* Yatsco Aff.Exh. D. I assume that once such a protective order is entered, plaintiff will fully comply with her obligation to provide the requested documents, and thus I will not at this juncture issue an order compelling production of those documents, although I will specifically grant leave to defendants to renew their motion to compel discovery in the event that full disclosure of requested records does not follow the entry of such a protective order within a reasonable period of time.

### 2. *Production of Specifically Requested Documents*

Two particular document requests by the defendants have been placed in issue as a

---

**3.** Plaintiff does not seem to dispute the defendants' contention that the named individual defendants (Abraham Seroussi and Karen Reid) are

entitled to a protective order governing their medical, financial and educational records.

result of plaintiff's refusal to comply with them.

### a) Document Request No. 10

In their document request defendants have made the following demand to the plaintiff:

Produce all employment records or other documents related to Plaintiff's employment with the City, including but limited to all correspondence received by Plaintiff from any administrator or employee of the City, and all pay stubs and all other wage records which Plaintiff currently possesses to or has access to.

Yatsco Aff.Exh. A (Plaintiff's Document Demand) ¶ 10. In response to that demand plaintiff has objected, arguing that the request "is vague, unreasonably broad, and unnecessarily burdensome [,]" and that the material sought could be obtained from other sources. *Id.* Exh. B.

■ It is true that the request in dispute is exceedingly broad, and not worded with sufficient clarify to allow a reasonable reader to know precisely what *documents* are sought. For example, the phrase "documents related to Plaintiff's employment with the City" is susceptible to a broad meaning which could encompass any number of documents, many if not most of which could be wholly irrelevant, insofar as plaintiff's claims and defendants' defenses are concerned. It is also true that by all accounts, the information sought in this demand is largely available to the defendants through other avenues. And, while the availability through other channels does not excuse a party from providing discovery, it is a factor which is relevant, particularly when the claim being made is that the request is overly broad and the requirement of compliance is unduly burdensome. *Cf. Ares–Serono, Inc. v. Organon Int'l B.V.*, 160 F.R.D. 1, 6 (D.Mass.1994) (plaintiff not permitted to inspect records on defendant's premises when same information could be obtained by less obtrusive means).

■ During the various discovery conferences held in this matter, I have expressed my view that absent compelling circumstances, plaintiff should be excused from having to produce pay records concerning her employment with the City, inasmuch as the information contained in those records is surely readily available to the City.[4] On the other hand, she may well possess other documents relating to her employment which are highly relevant to her claims and, though they may be available to the City, it would not be unduly burdensome for her to locate and produce them. In weighing the competing considerations surrounding this document request, I am unfortunately hampered not only by the sheer breadth of defendants' request, but additionally by plaintiff's complete failure to describe either the scope of the search which would be required in order to locate documents within her custody or control that are responsive to this request or the likely number of documents which would ultimately be located. Without this highly relevant information, I am simply not in a position to provide her with the protection which she apparently now seeks.

I am not unsympathetic to the plaintiff's doubts as to relevance of "four and a half years worth of pay stubs and other employment records, such as retirement plan documents and health insurance claim forms ...". *See* Keach Letter dated November 19, 2001 at 3. I am unimpressed, however, with the cavalier response given to the request, to the effect that plaintiff's counsel has "not instructed [his] client to find documents responsive to this request ..." *Id.*

This dispute presents a prime example of why *good faith* negotiations between the parties, in an effort to narrow discovery requests and resolve objections to those requests, is so critical to the process. For example, such discussions could have yielded an agreement by defendants that some of the records falling within the broadly worded demand were not being requested, and such a refinement of the request could potentially have led to a willingness by plaintiff to comply with it, as limited in scope by agreement.

---

4. Through negotiations, the defendants did narrow their request in this regard, and now seek only pay stubs and other wage records to be utilized by plaintiff at trial and/or those containing handwritten notations. *See* Yatsco Letter dated November 9, 2001 at 4. In rendering this decision I have assumed that plaintiff intends to honor this commitment.

Unfortunately, in light of the paucity of information in the record currently before the court I am unable to assess the factors which are relevant to whether a Rule 26(c) protective order should be issued in connection with this issue. Since plaintiff has failed to sustain her burden of demonstrating entitlement to a protective order, I am therefore left with no alternative but to require the plaintiff to comply with this request, which will require her to produce any documents within her custody or control falling within the scope of the request, as drafted.

### b) *Document Request No. 23*

Defendants' Rule 34 demand also requires that plaintiff

[p]roduce any and all newspaper articles, press releases or other media publications regarding: (a) Plaintiff or her employment; and/or (b) Councilman Reid's relationship with Mayor Seroussi.

Yatsco Aff.Exh. A (Defendants' Document Discovery Request) No. 23. In response to this request, plaintiff objects based upon lack of relevance, asserting the attorney work product doctrine and "laws allowing individuals to anonymously communicate with members of the media". Yatsco Aff.Exh. B. Plaintiff's response also invites defendants' counsel to "come next door and look through" his collection of newspaper articles about various cases in which he represents parties.[5] *Id.* Plaintiff also notes that the publications now being sought "are maintained and indexed by public libraries in both Gloversville and Schenectady". *Id.* Defendants defend this request by arguing that the requested records are highly relevant, since among the damages sought by the plaintiff in her complaint are those to compensate her for loss of reputation. Defendants apparently maintain that any damages sustained by Ms. Flaherty to her reputation were caused or aggravated by her intensive efforts to publicize the events surrounding the City's failure to reappoint her.

The primary basis for plaintiff's resistance to this request is the work product doctrine. That doctrine, which has as its roots the Supreme Court's decision in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), has been codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure. That rule provides, in relevant part, that

[A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the material by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.P. 26(b)(3).

■ The paramount concern underlying the work product doctrine, particularly when invoked to protect attorney work product, is the preservation of an attorney's litigation strategies.[6] Thus, for example, in *Herbert v. Lando* —a case relied upon by the plaintiff— the court rejected a request for the production of documents gathered and retained by an attorney during the course of an investigation, observing that "[t]he very decision of counsel to retain particular documents involves the exercise of an attorney's judgment". No. 74 Civ. 434, 1982 U.S.Dist. LEXIS 10934, at *5 (S.D.N.Y. Jan. 11, 1982). This principle would seem to apply with equal force to the retention by plaintiff's counsel of newspaper articles, and I therefore find that he should not be required to

---

5. The attorneys of record for the parties in this action apparently work in the same building. Unfortunately, this fact has not enhanced their ability to communicate and resolve issues in order to avoid the need for constant court oversight.

6. As can be seen from the rule itself, the work product doctrine as embodied in Rule 26(b)(3) extends beyond attorney work product to that of other party representatives.

divulge those articles which he has retained. Moreover, while similar considerations of preserving the integrity of an attorney's litigation strategy do not apply to articles retained by the plaintiff herself, I find that because of the ready availability of such articles to an industrious defense attorney wishing to conduct the minimal investigation required to independently find them, I will not order disclosure of newspaper articles which Ms. Flaherty possesses.

 The question concerning press releases prepared by plaintiff's counsel and disseminated to the media is significantly more troublesome. It is true that unlike in cases of attorney-client privilege, the mere fact that material shielded by the attorney work product doctrine is disclosed to a third party does not necessarily result in waiver of that argument. *See e.g., Peralta v. Cendant Corp.,* 190 F.R.D. 38, 41 (D.Conn.1999) (citing C. Wright, A. Miller & R. Marcus, Federal Practice & Procedure: Civil 2d § 2024) (purpose of work-product doctrine not to protect information from disclosure " 'to the outside world' " but only from opposing counsel and his or her client); *Morales v. United States,* No. 94 Civ. 4865, 94 Civ. 8773, 1997 WL 223080, at *1 (S.D.N.Y. May 5, 1997) (same). Nonetheless, the dissemination of materials prepared by plaintiff's counsel to the media is conceptually inconsistent with his claim that those documents provide an indication of his closely guarded trial strategy, and should therefore be shielded from disclosure.

It is this fact that distinguishes the instant situation from circumstances presented in the cases relied upon by the plaintiff including, *inter alia, Herbert,* 1982 U.S.Dist. LEXIS 10934. As previously discussed, in *Herbert* the plaintiff sought to discover documents collected and saved by defendants' attorneys during the course of litigation, something which would necessarily disclose attorney strategy by requiring production of documents which counsel "considered of sufficient significance to retain." *Id.,* at *5. It was that fact that persuaded the court to shield the required documents from disclosure, noting that counsel's decision to retain particular documents in and of itself involved the exercise of that attorney's judgment. *Id.* By contrast, insofar as the press releases are concerned, in this action defendants seek not to discern plaintiff's litigation strategy by ascertaining what documents are thought by her counsel to be relevant, but instead to acquire materials prepared by counsel and freely shared with the public concerning the action.

Based upon the foregoing, I find that plaintiff should be required to produce the requested press releases, and will therefore compel compliance with that portion of defendants' request, but not the portion requiring production of newspaper articles retained by the plaintiff and her counsel.

### c) *Clarification Of Prior Responses*

The last area of disagreement presented to the court concerns a somewhat ill-defined request by defendants for an order compelling plaintiff to "respond with specificity" to certain of defendants' document requests, including those numbered 3, 8, 13, 15–18 and 25. *See* Yatsco Letter dated November 9, 2001 at 7. Defendants make this request in light of the fact that although those requests have been answered, plaintiff's responses to those requests state that " '[u]pon information and belief' " no such documents exist within plaintiff's possession.[7] *Id.* Defendants thus request clarification and assurance as to the reliability of those responses.

It is indeed disturbing that despite service of the document discovery request nearly seven months ago, both the plaintiff and her attorney freely admit they have not made a search to determine what documents, if any, exist within her possession, custody or control which could potentially fall within one or more of the enumerated categories of defendants' requests. Nonetheless, in my view the current dispute is not yet ripe. Instead, I suggest that the defendants inquire further during plaintiff's deposition concerning her responses to these requests. If, based upon Ms. Flaherty's responses to such question-

---

7. While this response relates only to documents within plaintiff's possession, the relevant discovery rules require the production of documents within a party's "possession, custody or control". *See* Fed.R.Civ.P. 34(a).

ing, they feel that full disclosure in accordance with the Federal Rules of Civil Procedure and this decision has not been made, then in such event they may reapply to the court for further assistance, including the issuance of appropriate sanctions.

## IV. *SUMMARY AND CONCLUSION*

The present discovery dispute, in combination with prior encounters with this action, suggests to me that the parties and their counsel have chosen to shirk their responsibilities under the Federal Rules of Civil Procedure to comply with legitimate pretrial discovery requests, and to strive in good faith to resolve any differences, or at the very least, to narrow the issues to be presented to the court for determination. One of the unfortunate results of this shortcoming is my inability to address with certainty some of the issues now being raised, particularly given the poor state of the record currently before the court.

In response to the specific issues presented, I find that a reciprocal protective order should be entered governing the production during pretrial discovery of financial, educational and medical records of individuals, but not the production of Gloversville City financial records. I also find that plaintiff should be required to comply with the request that she produce records associated with her employment with the City, as well as all media press releases prepared and disseminated by either Ms. Flaherty or her attorney. Beyond this, I find that defendants' request for an order compelling discovery should be denied, at least at this juncture.

I note that costs and attorneys' fees have been sought in connection with the instant application. While there is provision under Rule 37 of the Federal Rules of Civil Procedure for the imposition of costs and attorneys' fees, as well as various other sanctions, for failure to comply with legitimate discovery requests, I do not find that such an award is currently justified. I caution the parties, however, that if it does not appear to my satisfaction that they are working together in good faith to resolve or narrow their areas of disagreement, and I find that one or both of the parties have acted in bad faith or in derogation of their responsibilities, I will

consider the imposition of appropriate sanctions in the future.

Based upon the foregoing, it is hereby

ORDERED as follows:

1) The request by defendants for a "reciprocal" protective order is GRANTED, as indicated herein, except as to plaintiff's request for discovery of financial records of the City of Gloversville.

2) The parties shall meet and confer within ten (10) days of the date of this order, *in person,* and shall, if they are able to agree on the language of such an order, submit to the court within ten (10) days thereafter a stipulated protective order consistent with the terms of this opinion.

3) In the event that the parties are unable to agree upon the wording of an appropriate protective order, notwithstanding the guidance previously provided, the court will draft and impose a protective order but will consider the imposition of sanctions on one or both parties as a result of their failure to agree.

4) Defendants' motion for an order compelling plaintiff to comply with document request no. 10 is GRANTED, and plaintiff is directed, within thirty (30) days of the date of this order, to produce all records within her possession, custody or control falling within the scope of that request.

5) Defendants' request for an order compelling compliance with document request no. 23 is GRANTED, to the extent that it requires production of press releases prepared and forwarded to the media by plaintiff and/or her counsel, but is otherwise DENIED. Within ten (10) days of the date of this order plaintiff is directed to provide full compliance with that portion of document request no. 23 requiring production of all such press releases.

6) Defendants' request for clarification of plaintiff's responses to their document requests is DENIED, without prejudice to their right to renew that request upon a full record after having first discussed the matter and/or addressed it during the plaintiff's deposition.

7) No costs or attorneys' fees will be awarded to any party at this juncture in connection with the pending motions.

8) The clerk shall docket the parties' submissions discussed in this order, specifically the affidavit of Tanya A. Yatsco, Esq., with exhibits attached, dated November 9, 2001; the corresponding letter from Ms. Yatsco to this court, dated that same day; and the letter from Elmer R. Keach, III to this court, dated November 19, 2001.

9) The clerk shall promptly forward copies of this order to counsel for the parties by first class mail.