Ramon **PERALTA**

v.

**CENDANT CORPORATION.**

No. 3:98cv01452 (JBA).

United States District Court,
D. Connecticut.

Oct. 22, 1999.

Daniel H. Kryzanski, Stratford, CT, for plaintiff.

A. Robert Fischer, Francis P. Alvarez, Maureen Ann Bresnan, Jackson, Lewis, Schnitzler & Krupman, Stamford, CT, for defendant.

## MEMORANDUM ORDER

ARTERTON, District Judge.

### A. BACKGROUND

This dispute involves the assertion of attorney-client privilege by defendant during a deposition of a former employee of the defen-

dant. Plaintiff's counsel subpoenaed Randi Klaber, plaintiff's former immediate supervisor and allegedly the decision-maker with regard to plaintiff's claims of employment discrimination. Klaber no longer is employed by defendant Cendant Corporation, though apparently her deposition was scheduled through the Cendant Human Resources office. Early in the deposition, plaintiff's counsel asked Ms. Klaber if she had spoken with anyone regarding the deposition. Ms. Klaber indicated that she had spoken to her husband and to Ms. Maureen Bresnan, attorney for Cendant who was present at the deposition representing defendant (but not Ms. Klaber). When plaintiff's counsel asked Ms. Klaber about her conversation with Ms. Bresnan, Ms. Bresnan objected, and instructed the deponent not to answer the question. Later in the deposition, subsequent to a break requested by the deponent, plaintiff's counsel asked Ms. Klaber what, if anything, she had discussed with Ms. Bresnan during the break. Defendant's counsel again objected, and instructed her not to answer.

Plaintiff's counsel then contacted the Court regarding the privilege dispute. A short argument regarding the assertion of the attorney-client privilege was then held, on the record. Ms. Bresnan indicated at this point that her conversation with Ms. Klaber was a "two-way discussion," Dep. at 103, in that the witness spoke to her about "the underlying facts in this case," and Ms. Bresnan, in turn, spoke to the witness about "the defendant's position." Their conversation during the break, according to Ms. Klaber, involved a request for "guidance on how to answer a line of inquiry that she perceived may cause her problems or may be unclear." *Id.* Ms. Klaber's deposition was continued, and the parties submitted letter briefs.

## B. Discussion

In *Upjohn Co. v. United States,* the Supreme Court held that a corporation's attorneys' conversations with corporate employees could be covered by the attorney-client privilege. 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). This privilege was found applicable by the Supreme Court to communications which: 1) were made to the corporate counsel, acting as such; 2) were made at the direction of corporate superiors, for the purpose of securing legal advice from counsel; 3) concerned matters within the scope of the employees' corporate duties; and 4) the employees were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice. *Id.* at 394–95, 101 S.Ct. 677. If Ms. Klaber were still employed by Cendant, it is clear that her conversations with Ms. Bresnan about matters within Ms. Klaber's corporate duties would be privileged. The Supreme Court's decision, however, left open the question of whether communications between counsel and *former* employees were included within the privilege. *Id.* at 395, n. 3, 101 S.Ct. 677. Chief Justice Burger's concurrence outlined his view of the boundaries of the privilege as including former employees:

> A communication is privileged when, as here, an employee or former employee speaks at the direction of the management with an attorney regarding conduct or proposed conduct within the scope of employment.

449 U.S. at 403, 101 S.Ct. 677 (Burger, C.J., concurring). Defendant urges this Court to adopt Burger's extension of the privilege to communications with former employee Klaber.

Several federal courts have addressed this issue, and determined that *Upjohn's* rationale applies to former employees. In *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust,* the Ninth Circuit noted, in a footnote, that the attorney-client privilege covers communications with former employees because "former employees, as well as current employees, may possess the relevant information needed by corporate counsel to advise the client with respect to actual or potential difficulties," and because "the attorney-client privilege is served by the certainty that conversations between the attorney and client will remain privileged after the employee leaves." 658 F.2d 1355, 1361 n. 7 (9th Cir.1981). In *Amarin Plastics, Inc. v. Maryland Cup Corp.,* the court concluded that communications between a former employee and a corporate party's counsel may be privileged, when the purpose of the com-

munications was to give the former employer legal advice. 116 F.R.D. 36 (D.Mass.1987). The Fourth Circuit has also extended *Upjohn's* analysis to former employees. *Better Government Bureau, Inc. v. McGraw,* 106 F.3d 582, 606 (4th Cir.1997) (finding that privilege precluded inquiry into interview conducted by investigatory attorney with former employee of agency).

The Second Circuit has not yet ruled on this issue, but several District Courts have considered the question in the context of deciding whether ex parte communications by opposing counsel with a former employee of a corporate party violated Model Rule 4.2. In *Dubois v. Gradco Systems,* 136 F.R.D. 341 (D.Conn.1991), the court concluded that former employees of the defendant corporation were not "adverse parties" for the purposes of the Rule, with several caveats:

> [S]ome former employees continue to personify the organization even after they have terminated their employment relationship. An example would be a managerial level employee involved in the underlying transaction, who is also conferring with the organization's lawyer in marshaling the evidence on its behalf.... This kind of former employee is undoubtedly privy to privileged information, including work product, and an opposing lawyer is not entitled to reap a harvest of such information without a valid waiver by the organization....

*Id.* at 346, *quoting* G. Hazard and W. Hodes, the Law of Lawyering: A Handbook on the Model Rules of Professional Conduct 436–436.1. Because the defendant in *Dubois* had not identified any specific privileged information to which the former employees were privy, a protective order was not justified. *Id. See also Polycast Technology Corp. v. Uniroyal, Inc.,* 129 F.R.D. 621 (S.D.N.Y. 1990) (since defendant had not demonstrated that former employee was privy to specific privileged information, privilege did not attach); *United States v. Housing Authority of the Town of Milford,* 179 F.R.D. 69, 72–73 (D.Conn.1997) (allowing ex parte contact with former employee; party asserting privilege had not met burden of demonstrating that

former employee was acting as trial consultant).

Other courts have reached different conclusions. In *Clark Equipment Co. v. Lift Parts Mfg. Co.,* No. 82C4585, 1985 WL 2917 (N.D.Ill., Oct. 1, 1985), corporate counsel had asserted the attorney client privilege to preclude inquiry into predeposition, postemployment conversations with a former employee. The court concluded that *Upjohn* did not support an extension of the privilege in the situation presented:

> Former employees are not the client. They share no identity of interest in the outcome of the litigation. Their willingness to provide information is unrelated to the directions of their former corporate superiors, and they have no duty to their former employers to provide such information. It is virtually impossible to distinguish the position of a former employee from any other third party who might have pertinent information about one or more corporate parties to a lawsuit.

*Id.* at \*12. *See also Barrett Industrial Trucks v. Old Republic Ins. Company,* 129 F.R.D. 515 (N.D.Ill.1990) (no privilege applicable); *Connolly Data Systems v. Victor Technologies,* 114 F.R.D. 89 (S.D.Cal.1987) (no privilege applicable under California law, as former employee could not bind corporation, because former employee not required to speak to corporation's attorney, and former employee not the only individual with relevant knowledge).

None of the cases cited above answers the specific question presented in this case: whether, under federal law, counsel for an employer can claim a privilege as to its attorney's communications in preparing an unrepresented former employee for deposition by opposing counsel, and/or such attorney's communications during the deposition about her testimony in that deposition. In the Court's view, wholesale application of the *Upjohn* principles to former employees as if they were no different than current employees is not justified by the underlying reasoning of *Upjohn.* Ms. Klaber is not an employee of Cendant, such that she must speak "at the direction of the management." 449 U.S. at 403, 101 S.Ct. 677 (Burger, C.J., concur-

ring). As in *Clark Equipment,* 1985 WL 2917, there is no claim that Ms. Klaber has any duty to provide the information sought in the deposition here, as she has not been retained as a consultant nor has she been claimed as under any continuing contractual duty to the defendant.[1] Further, absence of a blanket rule that all such communications are protected will not cause irreparable damage to this important attorney client privilege, and the interests it protects. As Wigmore admonished:

> [T]he privilege remains an exception to the general duty to disclose. Its benefits are all indirect and speculative; its obstruction is plain and concrete.... It is worth preserving for the sake of a general policy, but it is nonetheless an obstacle to the investigation of the truth. It ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.

8 Wigmore, Evidence sec. 2291, at 554 (rev. ed.1961).

▪ Applying the rationale of the above cases, the Court concludes that any privileged information obtained by Ms. Klaber while an employee of Cendant, including any information conveyed by counsel during that period, remains privileged upon the termination of her employment. As the Ninth Circuit noted in *Petroleum Products* "the attorney-client privilege is served by the certainty that conversations between the attorney and client will remain privileged after the employee leaves." 658 F.2d at 1361 n. 7. Further, if the nature and purpose of Ms. Bresnan's communications with Ms. Klaber was to learn facts related to plaintiff's termination that Klaber was aware of as a result of her employment, such communications are also privileged, whenever they occurred. Thus, as to Ms. Bresnan's predeposition communications with Ms. Klaber limited to the "underlying facts in this case," the defendant's privilege attaches and such communications are privileged.

This conclusion, however, does not completely resolve the parties' current dispute about communications which occurred *after* Ms. Klaber's employment ended, related to her deposition preparation and testimony. To the extent that conversations between Ms. Bresnan and Ms. Klaber went beyond Ms. Klaber's knowledge of the circumstances of plaintiff's employment and termination, and beyond Ms. Klaber's other activities within the course of her employment with the defendant, such communications, if any, have not been shown to be entitled to defendant's attorney-client privilege. If, for example, Ms. Bresnan informed Ms. Klaber of facts developed during the litigation, such as testimony of other witnesses, of which Ms. Klaber would not have had prior or independent personal knowledge, such communications would not be privileged, particularly given their potential to influence a witness to conform or adjust her testimony to such information, consciously or unconsciously. Although it is not clear from the record of the oral argument what Ms. Bresnan meant by "defendant's position," to the extent these communications exceeded the boundaries discussed above, they are not covered by Cendant's attorney-client privilege. Further, with respect to the inquiry into Ms. Bresnan and Ms. Klaber's discussions during the break as to how a question should be handled, they have not been shown to be entitled to any privilege, and opposing counsel has the right to ask about matters that may have affected or changed the witness's testimony.

▪ The distinction drawn by the Court between attorney-client privileged and non-privileged communications with former employees should not be difficult to apply if the essential point is kept in mind: did the communication relate to the former employee's conduct and knowledge, or communication with defendant's counsel, during his or her employment? If so, such communication is protected from disclosure by defendant's attorney-client privilege under *Upjohn.* As to any communication between defendant's

---

1. According to the Restatement (Third) of the Law Governing Lawyers, the attorney-client privilege would not normally attach to communications between former employees and counsel for the former employer. § 123, Comment e. The Restatement relies on agency principles to reach this conclusion, but notes an exception for employees that may have a continuing duty to the corporation.

counsel and a former employee whom counsel does not represent, which bear on or otherwise potentially affect the witness's testimony, consciously or unconsciously, no attorney-client privilege applies.

While the parties did not address the issue in their letter briefs, the communications here may be shielded by the work-product doctrine. *See Barrett Industrial Trucks,* 129 F.R.D. at 518 (while attorney-client privilege did not apply to communications with former employee, work product doctrine protected predeposition conversations). Generally, under Fed.R.Civ.P. 26 the work product doctrine applies to "documents and tangible things," as well as "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." *See Hydramar, Inc. v. General Dynamics Corp.,* 119 F.R.D. 367, 372 (E.D.Pa.1988) ("The work product doctrine does in a very limited way operate to circumscribe the scope of depositions upon oral examination.")

■ To the extent the communications are specifically Ms. Bresnan's conclusions or opinions, they may be covered by work product protection under Fed.R.Civ.P. Rule 26. Since the purpose of the work product doctrine "is not to protect the evidence from disclosure to the outside world, but rather to protect it only from the knowledge of opposing counsel and his client," it follows that "disclosure of [work product information] to third persons does not waive the work-product immunity." C. Wright, A. Miller & R. Marcus, Federal Practice and Procedure: Civil 2d § 2024. *See also Morales v. United States,* 1997 WL 223080 (S.D.N.Y.) (deposition questions to non-party witnesses regarding conversations with defendant's counsel held to be protected by work product; no waiver by disclosure to third persons, and material possibility that ordering witnesses to respond to questions will reveal party's legal strategy). While plaintiff's counsel will therefore be precluded from asking Ms. Klaber explicitly about Ms. Bresnan's legal conclusions or legal opinions that reveal defendant's legal strategy, the work product doctrine will not preclude inquiry into other non-privileged communications as

set out above. *See* Susan J. Becker, *Conducting Informal Discovery of a Party's Former Employees: Legal and Ethical Concerns and Constraints,* 51 Md.L.Rev. 239, 308 (1992) ("Extension of the [work product] doctrine to cover every comment made by counsel during an ... interview with a former employee prevents opposing counsel from conducting meaningful inquiry into the seeds of bias that counsel may have intentionally or inadvertently planted during that interview."). Therefore, to the extent Ms. Bresnan communicated her "conclusions, opinions, or legal theories," even if not covered by Cendant's attorney-client privilege, such communications would be protected from discovery by opposing counsel under Rule 26.

Counsel are directed to conclude Ms. Klaber's deposition in accordance with this opinion.

IT IS SO ORDERED.